

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 DEC -9 I P 4: 13

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LEROY WILSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-1522** |
| **N. BURL CAIN, WARDEN**<br>**STATE OF LOUISIANA** | **SECTION "A"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

___ Fee_____
___ /Process_____
_X_ Dktd_____
_✓_ CtRmDep_____
___ Doc. No._____

the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED**

**WITH PREJUDICE** as time-barred.

I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Leroy Wilson, is incarcerated in the Louisiana State Penitentiary

in Angola, Louisiana.[2]   On May 18, 1995, Wilson was indicted by a grand jury in

Orleans Parish on the charge of second degree murder.[3]   The Louisiana Fourth Circuit

Court of Appeal summarized the facts proven at trial as follows:

> Shortly after 7:00 p.m. on Friday, February 10, 1995, seventeen-year-old Eric
> Johnson and fifteen-year-old Jessica Strahan were walking to a neighborhood park
> in the Gentilly area of New Orleans.  After passing two young men standing by a
> driveway, they noticed that the men kept looking at them.  Mr. Johnson asked Ms.
> Strahan if she knew them, but she said no.
>
> When the couple had reached the edge of the park, one of the men approached
> them while the other remained behind.  Mr. Johnson asked him, "What you coming
> over here for, Dog?"  When the man responded with, "What you asking me?"  Mr.
> Johnson repeated his question.  The individual then lifted his shirt to reveal a gun,
> causing Mr. Johnson and Ms. Strahan to look at each other in shock.  Suddenly, the
> man pulled the gun and began firing at Mr. Johnson.  After the first shot, the person
> who had remained in the background started running, but Ms. Strahan was too
> shocked to run until a second shot was fired.
>
> Several patrol officers of the New Orleans Police Department, in the area on
> another call, rushed to the scene after hearing five or six gunshots.  Mr. Johnson was
> lying in the street at the corner of Treasure and Piety Streets, bleeding from gunshot
> wounds in his head, chest and left thigh.  Although an EMS team arrived quickly, he
> was pronounced dead at the scene.  An autopsy revealed that either the shot to the
> head or to the chest would have been fatal.  No alcohol or illegal drugs were found
> in Mr. Johnson's tissues or organs.
>
> Ms. Strahan, who had run to her nearby home to call the police, returned to
> the scene and told Officer Derek Frick she had been with Mr. Johnson when he was
> shot.  According to Officer Frick's initial report, Ms. Strahan described both the

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 3, Indictment, 5/18/95.

2

perpetrator and his companion as black males, about 5'7" tall and under twenty years old; one man was wearing a brown or black flannel shirt, while the other wore a black jacket and a black cap.  At trial, Officer Frick testified that a suspect matching the description of the gunman was arrested about two blocks away later that evening.

Shortly after his arrival at the intersection, Homicide Detective Norman Pierce was informed that Ms. Strahan was an eyewitness to the shooting. He briefly interviewed her, then, after completing his on-scene investigation, took Ms. Strahan to the police station for a formal, audiotaped statement.  However, her description of the perpetrator as a black male, between 5'3" and 5'7" and wearing a dark shirt, was too general to lead to a suspect, so Det. Pierce continued his investigation in the ensuing weeks.

On direct examination, Det. Pierce testified that it was just over a month after the killing that he presented a photographic lineup to Ms. Strahan.  Without any prompting, suggestion or inducement from the officer, she pointed to the picture of Leroy Wilson, the defendant, as the person who shot and killed her boyfriend, Eric Johnson.  Ms. Strahan signed the back of that photo and initialed the other five.

* * *

Redirect was concluded when Det. Pierce reiterated that the warrant for Mr. Wilson's arrest was based upon three identifications.  On recross, defense counsel asked if the two people, other than Ms. Strahan, who named Mr. Wilson as the shooter knew him before "this incident."  Det. Pierce responded affirmatively.

Jessica Strahan was the final witness to testify at the June 1997 trial. As she explained the events leading up to the murder, she described the shooter as dark-complected, slim, and a little taller than herself.  Ms. Strahan testified that she had no doubt in her mind that Leroy Wilson, the man sitting in the courtroom before her, was the person who killed Eric Johnson.

On cross, Ms. Strahan stated that she had seen Mr. Wilson in the neighborhood and at her school before the shooting, but she had never met him.  Ms. Strahan insisted that when she was questioned at the police station she told Det. Pierce she had seen the gunman before, but she admitted she had not said this during the initial on-scene interview.  Some time later, but before the photo lineup, Ms. Strahan's cousin told her Leroy Wilson was the man who had killed Eric Johnson. However, while neither her cousin nor anyone else was nearby when the shooting occurred, Ms. Strahan stated there were other people some distance away in the park at the time of the shooting.

(footnotes omitted) State v. Wilson, 773 So.2d 222, 224-226 (La. App. 4th Cir. 2000);

St. Rec. Vol. 1 of 3, Fourth Circuit Opinion, 99-KA-3151, November 8, 2000.

Wilson was tried by a jury on June 23, 1997, and found guilty as charged.[4] The state trial court sentenced him on July 18, 1997, to life imprisonment without probation, parole or suspended sentence.[5]

The conviction became final five days later, on July 23, 1997, when Wilson did not timely file a written notice of appeal or file for reconsideration of his sentence. Cousin v. Lensing, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the five-day period for filing a notice of appeal under La. Code Crim. P. art. 914[6]).[7]

Almost two years later, on May 26, 1999, Wilson wrote a letter to the Louisiana Fourth Circuit Court of Appeal inquiring of the status of his appeal.[8] The letter was filed

---

[4]St. Rec. Vol. 1 of 3, Trial Minutes (3 pages), 6/23/97; Trial Transcript, 6/23/97; Jury Verdict, 6/23/97.

[5]St. Rec. Vol. 1 of 3, Sentencing Minutes, 7/18/97; Amended Sentencing Minutes, 9/17/97; Sentencing Transcript, 7/18/97.

[6]At the time of the conviction, La. Code Crim. P. art. 914 required that a criminal defendant move for leave to appeal within five days of the order or judgment that is being appealed or of a ruling on a timely motion to reconsider a sentence. Failure to move timely for appeal under Article 914 renders the conviction and sentence final at the expiration of the period for filing the motion for appeal. State v. Counterman, 475 So.2d 336, 338 (La. 1985). Article 914 was amended by La. Acts 2003, No. 949, § 1 to provide 30 days for filing of the notice of appeal. Because this statutory amendment occurred well after petitioner's sentencing, it is inapplicable to this case.

[7]At the sentencing hearing, Wilson's counsel noted the intent to file a motion for a new trial and for appeal, but did not file the written motions into the record as ordered.  St. Rec. Vol. 1 of 3, Sentencing Transcript, p.3, 7/18/97.  Because he did not comply with the order to reduce the request to writing, no return date was set or appeal lodged. La. App. R. 4-3.

[8]The letter is not part of the record before this court.

4

as an application for supervisory writs.[9]  The court denied the application on July 1, 1999, because the letter failed to comply with the uniform rules of court and was not sufficient to serve as a writ application.[10]

Thereafter, on September 10, 1999, an Orleans Parish indigent defender filed a motion with the state trial court requesting that Wilson be granted an out-of-time appeal.[11]  The trial court granted the motion.[12]

On appeal, Wilson's counsel asserted five assignments of error:[13] (1) Trial counsel was ineffective for (a) allowing hearsay into evidence without objection, (b) allowing the hearsay police report into evidence without objection, (c) failing to preserve trial error for appellate review, (d) failing to pursue a motion for a new trial, and (e) failing to pursue a written order of appeal. (2) The trial court/clerk/court stenographer failed adequately to record the proceedings. (3) The trial court erred in allowing the detective to testify regarding identifications made by non-testifying witnesses, which denied Wilson the right to confront his accusers. (4) The trial court erred in allowing the

---

[9] The filing date was obtained from the records of the clerk of court for the Louisiana Fourth Circuit.

[10] St. Rec. Vol. 1 of 3, 4th Cir. Order, 99-K-1306, 7/1/99.

[11] St. Rec. Vol. 3 of 3, Motion for Out of Time Appeal, 9/10/99.

[12] St. Rec. Vol. 3 of 3, Trial Court Order, 9/10/99.

[13] St. Rec. Vol. 1 of 3, Appellate Brief, 99-KA-3151, 2/8/00.

prosecutor to admit the detective's case file/complaint into evidence. (5) The trial court failed to advise Wilson of his right to pursue post-conviction relief.

The Louisiana Fourth Circuit affirmed the conviction and sentence on November 8, 2000.[14] The court held that the issue of ineffective assistance of counsel was preserved for post-conviction review and the remaining claims were without merit.

On December 12, 2000, Wilson mailed a letter to the Louisiana Supreme Court requesting an extension of time to file a writ of certiorari for review of the appellate court's ruling.[15]  The letter was filed as a writ application on January 8, 2001 and later denied without reasons on November 21, 2001.[16]

On February 28, 2001, Wilson filed a writ application in the Louisiana Supreme Court seeking review of the same claims raised by counsel on appeal.[17]  The application was denied on November 9, 2001, but Wilson was instructed that he may raise the ineffective assistance of counsel claim on post-conviction review.[18]

Almost two years later, on September 3, 2003, Wilson filed an application for post-conviction relief in the Louisiana Fourth Circuit in which he raised the following

---

[14]State v. Wilson, 773 So.2d at 229; St. Rec. Vol. 1 of 3, 4th Cir. Opinion, 99-KA-3151, 11/8/00.

[15]St. Rec. Vol. 2 of 3, La. S. Ct. Writ Application, 01-KO-0050, 1/8/01 (post marked 12/12/00).

[16]Id.; St. Rec. Vol. 2 of 3, La. S. Ct. Order, 2001-KO-0050, 11/21/01.

[17]St. Rec. Vol. 2 of 3, La. S. Ct. Writ Application, 01-KO-0525, 2/28/01 (post marked 1/22/01).

[18]St. Rec. Vol. 2 of 3, La. S. Ct. Order, 2001-KH-0525, 11/9/01.

grounds for relief:[19] (1) The indictment failed to allege the essential elements of the crime charged. (2) The court failed to recognize a mandatory sentencing issue. (3) His counsel was ineffective.  He also raised the following supplemental grounds: (1) The trial court did not have subject matter jurisdiction because of the illegally impaneled grand jury. (2) La. Code Crim. P. art. 413 was unconstitutional at the time of the indictment. (3) His counsel was ineffective.  (4) The sentencing provisions were unconstitutional because they did not recognize the prohibition on parole eligibility. (5) The prohibition against parole, probation and suspension of sentence in the sentencing provisions is unconstitutional.

The record reflects that Wilson did not file an application for post-conviction relief in the state trial court prior to seeking relief in the appellate court.[20]  Nevertheless, on September 30, 2003, the Louisiana Fourth Circuit denied Wilson's application finding no merit to the claims raised.[21]

On November 4, 2003, Wilson filed for review of this order in the Louisiana Supreme Court, and the application was denied without reasons on November 19, 2004.[22]

_____

[19]St. Rec. Vol. 2 of 3, 4th Cir. Writ Application, 2003-K-1572, 9/3/03.

[20]St. Rec. Vol. 3 of 3, Minute Entry, 9/4/03.

[21]St. Rec. Vol. 2 of 3, 4th Cir. Order, 2003-K-1572, 9/30/03.

[22]St. Rec. Vol. 2 of 3, La. S. Ct. Writ Application, 03-KH-3045, 11/4/03 (post marked 10/21/03); St. Rec. Vol. 2 of 3, La. S. Ct. Order, 2003-KH-3045, 11/19/04.

7

## II.   FEDERAL HABEAS PETITION

On April 29, 2005, Wilson filed a petition for federal habeas corpus relief seeking relief on the following grounds:[23] (1) Counsel was ineffective. (2) The grand jury indictment failed to allege an essential element of the crime charged. (3) Counsel failed to file a motion to quash the indictment. (4) The court failed to recognize the mandatory sentencing issue. (5) The state trial court was without subject matter jurisdiction because the grand jury was unconstitutionally impaneled. (6) The prohibition against parol, probation and suspension of sentence in the sentencing provisions is unconstitutional.

The State responded to Wilson's federal petition alleging that the petition is not timely filed.[24]

## III.   STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.   The AEDPA went into effect on April 24, 1996[25] and applies to habeas petitions filed after that date.   Flanagan v. Johnson, 154 F.3d 196, 198

---

[23]Rec. Doc. No. 1, Memorandum in Support.

[24]Rec. Doc. No. 18.

[25]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.   Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.   United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

(5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)). The AEDPA therefore applies to Wilson's petition, which, for reasons discussed below, is deemed filed in this court on April 5, 2005.[26]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; <u>i.e.</u>, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. <u>Nobles v. Johnson</u>, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

For the following reasons, I find that Wilson's petition is <u>not</u> timely filed under the AEDPA and must be dismissed with prejudice for that reason.

IV.   <u>STATUTE OF LIMITATIONS</u>

Section 2244(d)(1) of the federal habeas statute requires that a petitioner bring his Section 2254 claims, among other things not relevant here, within one year from the date

---

[26]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. <u>Coleman v. Johnson</u>, 184 F.3d 398, 401 (5th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1057 (2000); <u>Spotville v. Cain</u>, 149 F.3d 374, 378 (5th Cir. 1998); <u>Cooper v. Brookshire</u>, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Wilson's petition on April 29, 2005. Wilson did not date his signatures on the petition, the memorandum in support or the pauper application. The envelope in which the petition was received was post marked April 5, 2005. I will consider this to be the earliest date he could have submitted it to prison officials for mailing. The record does not demonstrate any other appropriate date and Wilson has not suggested any.

of finality of the judgment of conviction.[27]  In this case, the State suggests without

discussion that Wilson's conviction became final after the Louisiana Fourth Circuit

affirmed his conviction on appeal.

Under the AEDPA, a state conviction becomes final at the end of the period for

the defendant to pursue the next available step in the direct appellate review process.

Salinas v. Dretke, 354 F.3d 425, 430 (5th Cir.), cert. denied, 541 U.S. 1032 (2004).  In

this case, Wilson did not timely file a written notice of appeal or file for reconsideration

of his sentence.  Instead, Wilson was granted and received an out-of-time appeal almost

two years after his conviction would otherwise be considered final under the AEDPA.

The question before the court, therefore, is whether the out-of-time appeal had an impact

---

[27]Specifically, Section 2244(d) provides:
(1)  A 1-year period of limitation shall apply to an application for a writ of habeas
corpus by a person in custody pursuant to the judgment of a State court.  The limitation
period shall run from the latest of--
> (A) the date on which the judgment became final by the conclusion of
> direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by
> State action in violation of the Constitution or laws of the United States
> is removed, if the movant was prevented from filing by such State
> action;
> (C) the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly recognized
> by the Supreme Court and made retroactively applicable to cases on
> collateral review; or
> (D) the date on which the factual predicate of the claim or claims
> presented could have been discovered through the exercise of due
> diligence.
(2)  The time during which a properly filed application for State post-conviction or other
collateral review with respect to the pertinent judgment or claim is pending shall not be
counted toward any period of limitation under this section.

on the finality of his conviction and the commencement of AEDPA's statute of limitations period.

In Salinas, the United States Fifth Circuit Court of Appeals addressed the question of whether an out-of-time petition for appellate review was still within "direct review" such that it restarts the finality of the state conviction at issue for AEDPA limitations purposes. Id., at 429.   The Fifth Circuit squarely held that it does not.

In so finding, the Salinas court acknowledged that the granting of a petition for out-of-time appellate review by the Texas state courts restored the petitioner to the position he was in when he first possessed the right to direct review under state law. Id. at 429; Cockerham v. Cain, 283 F.3d 657 (5th Cir. 2002) (same, under Louisiana law). The court determined, however, that the granting of out-of-time state appellate review did not affect finality under federal law.

The Fifth Circuit considered the fact that, under Texas law, in order to obtain out-of-time appellate review, a petitioner must make his request through the collateral review process. The court concluded that this procedural necessity took the petitioner out of the "direct review" process and entitled him to nothing more than tolling of the federal limitations period. Id. at 430.

Thus, for purposes of federal law, the Fifth Circuit held in Salinas that the granting of a request for out-of-time review "tolls AEDPA's statute of limitations . . . but it does

not require a federal court to restart the running of AEDPA's limitations period altogether." Id. at 430 (footnote omitted) (emphasis added).  The Fifth Circuit held that, for limitations purposes, Salinas's conviction was final when the direct review process ended and it remained final for AEDPA purposes. Id. The Salinas court further resolved that the fact that petitioner was eventually granted an out-of-time appeal due to ineffective assistance of counsel (i.e., counsel failed to lodge the appeal timely) did not restart the federal limitations period, nor did attorney error or neglect constitute a basis for equitable tolling.  Salinas, 354 F.2d at 432 (quoting Cousin, 310 F.3d at 848). Subsequently, the Salinas rationale was applied to a Louisiana out-of-time writ application in McGee v. Cain, 104 Fed. Appx. 989, 991-992 (5th Cir. 2004).

Under Louisiana law, as in Texas, to obtain an out-of-time appeal, a petitioner must file an application for post-conviction relief. McGee, 104 Fed. Appx. at 991 (citing State v. Counterman, 475 So.2d at 339).  Thus, the holding of the United States Fifth Circuit Court of Appeals in Salinas applies to Louisiana convictions, leaving such convictions final for purposes of commencement of the AEDPA limitations period at the conclusion of the original period for seeking direct review.  Id.

In the instant case, Wilson, like the petitioners in Salinas and McGee, was granted his out-of-time appeal through a collateral post-conviction request made to the state trial court.  The out-of-time appeal process would allow Wilson only tolling of the AEDPA's

limitations period. However, the out-of-time appeal did <u>not</u> restart or revive the finality of Wilson's conviction for purposes of calculating the commencement date for AEDPA's one-year limitations period. Therefore, the suggestion in the State's response that Wilson's conviction became final at the conclusion of his out-of-time appeal is legally erroneous under <u>Salinas</u>.[28]

Pursuant to the holding in <u>Salinas</u>, as applied to Louisiana cases in <u>McGee</u>, Wilson's conviction became final on July 23, 1997, which was five days after he was sentenced and failed timely to appeal. <u>See</u> <u>Cousin</u>, 310 F.3d at 845.

Thus, literal application of the statute would bar Wilson's Section 2254 petition as of July 23, 1998. As discussed at footnote 28 above, under the federal mailbox rule, his federal petition is deemed filed on April 5, 2005, almost seven years after the deadline imposed by the AEDPA, and it must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year period of limitations in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist

---

[28]Furthermore, because Wilson's out-of-time appeal was not part of the "direct review process" according to <u>Salinas</u>, he is not entitled to tolling for any additional period he would have had to seek review in the United States Supreme Court. <u>Ott v. Johnson</u>, 192 F.3d 510, 513 (5th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1099 (2000).

13

which prevented timely filing.  Pace v. DiGuglielmo, 125 S.Ct. 1807, 1814 (2005);

Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001);

Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis, 158 F.3d at 810.

Equitable tolling is warranted only in situations where the petitioner was actively misled

or is prevented in some extraordinary way from asserting his rights.  Pace, 125 S. Ct. at

1814-15; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

The record suggests that Wilson's delayed appeal may have been the result of

error on the part of his trial counsel.  However, as noted above, the fact that counsel

failed to lodge a timely appeal does not constitute a basis for equitable tolling.  Salinas,

354 F.2d at 432 (quoting Cousin, 310 F.3d at 848).  In addition, as demonstrated by the

large gaps in time between filings, Wilson was not diligent in pursuing post-conviction

relief at any level and therefore would not be entitled to equitable tolling.

Wilson therefore has not asserted any reason that might constitute rare or

exceptional circumstances why the one-year period should be considered equitably

tolled, and my review of the record reveals none that might fit the restrictive boundaries

of "exceptional circumstances" described in recent decisions.  See United States v.

Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by

attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson,

184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety

claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).[29]

In addition to equitable tolling, however, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. Flanagan, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. Duncan, 533 U.S. at 175-178.

---

[29]Both Wilson's petition and the State's response were filed in this court, and this matter was under advisement, before the suspension of deadlines and time periods instituted by the court in the aftermath of Hurricane Katrina. Therefore, the disruptions caused by the hurricane are irrelevant to the AEDPA timeliness calculation in this case.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period.  Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. Pace, 125 S. Ct. at 1812 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-

20 (2002); <u>Williams,</u> 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. <u>Dillworth v. Johnson,</u> 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); <u>Nara v. Frank,</u> 2001 WL 995164, slip opinion at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. <u>Godfrey v. Dretke,</u> 396 F.3d 681, 686-88 (5th Cir. 2005).

Thus, the one-year AEDPA limitations period began to run in Wilson's case on July 24, 1997, the day after his conviction became final. The federal limitations period ran uninterrupted for 365 days until July 23, 1998, when it expired. Wilson had no properly filed state post-conviction or other collateral review proceedings pending during that period.

Even if equitable tolling was permitted for the period of delay between Wilson's sentencing and the lodging of his out-of-time appeal, Wilson's federal petition is no less untimely. For example, Wilson's appeal was affirmed by the Louisiana Fourth Circuit on November 8, 2000. That ruling remained pending until December 8, 2000, when he did not timely seek further review in the Louisiana Supreme Court within the required 30 days.[30] The AEDPA filing period began to run the next day, December 9, 2000, and ran uninterrupted for 365 days until it expired on December 8, 2001.[31] This was more than three years before he filed his petition in this federal court.

Wilson's filings in the Louisiana Supreme Court made during that period were not timely filed or postmarked and therefore provide him no tolling benefit. The United States Fifth Circuit Court of Appeals has held that a writ application to the Louisiana Supreme Court which fails to comply with La. S. Ct. R. X§5(a) is <u>not</u> properly filed because it is untimely, and post-conviction review is <u>not</u> pending for purposes of AEDPA's statute of limitations and tolling doctrines. <u>Williams v. Cain</u>, 217 F.3d 303, 309-11 (5th Cir. 2000); <u>see</u> <u>Pace</u>, 125 S.Ct. at 1812.

Nevertheless, even if tolling were permitted for the pendency of Wilson's improperly filed submissions in the Louisiana Supreme Court, the record establishes that

---

[30]La. S. Ct. Rule X§5 (a writ application to the Louisiana Supreme Court must be filed within 30 days of the appellate court's ruling without exception); La. Code Cirm. P. art. 922 (same); <u>Williams v. Cain</u>, 217 F.3d 303, 309-11 (5th Cir. 2000).

[31]Or, December 10, 2001, the next business day thereafter.

another two years passed without the filing of any state post-conviction or other collateral review by Wilson after his Louisiana Supreme Court writ applications were resolved in November 2001.

Thus, under any conceivable calculation, Wilson's federal habeas corpus petition was not timely filed under the AEDPA. Wilson has been wholly dilatory in pursuing federal habeas relief. His federal petition is deemed filed on April 5, 2005, which was almost seven years after the expiration of the one-year limitations period allowed under the AEDPA under the traditional calculation above. Thus, Wilson's petition must be dismissed as untimely under 28 U.S.C. § 2244(d)(1)(A).

## **RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that the petition of Leroy Wilson for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  <u>Douglass v. United</u>

<u>Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).


New Orleans, Louisiana, this _____ day of December, 2005.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE